CAROLINE T., Plaintiff, Appellant,

v.

**HUDSON SCHOOL DISTRICT,**
Defendant, Appellee.

No. 90–1245.

United States Court of Appeals,
First Circuit.

Heard Aug. 2, 1990.

Decided Sept. 25, 1990.

Martin Ames, Chelmsford, Mass., with whom Fred K. Mayer, III, Nashua, N.H., was on brief, for plaintiff, appellant.

Gerald M. Zelin, with whom Soule, Leslie, Zelin, Sayward & Loughman, Salem, N.H., was on brief, for defendant, appellee.

Before TORRUELLA, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

TORRUELLA, Circuit Judge.

This appeal presents the issue of whether the due process rights of an educationally handicapped child are violated when a school district is permitted to make an unofficial stenographic transcript or electronic recording of a special education hearing. Finding the issue wholly devoid of merit, we affirm the decision of the district court answering the question in the negative, denying appellants' motion for a restraining order, and dismissing their complaint.

## I. BACKGROUND

Thirteen year-old Caroline T., the daughter of Mr. and Mrs. T., lives with her parents in Hudson, New Hampshire. The Hudson School District is responsible for providing a free appropriate education to Caroline, given her educational handicap (dyslexia) and need for unique educational services. *See* 20 U.S.C. §§ 1400(c)–1401(a)(1); N.H. Rev. Stat. Ann. §§ 186-C:1–186-C:2(I). In June 1989, the District offered Caroline an Individualized Educational Plan ("IEP") for the 1989-90 school year, which was to be implemented by placing Caroline in one of the District's public schools. Her parents rejected the plan and on July 11, 1989 requested an impartial due process hearing to resolve the dispute.[1]

A prehearing conference was held on October 30, 1989. All parties were represented by counsel, and the hearing officer took notes and tape recorded the proceeding. Thereafter, he issued an order stating that "[t]he school district may employ a court reporter to supplement the undersigned's effort to record the hearing." Any tape recording made by the District would necessarily have been independent of the hearing officer's recordings, which were part of the official record of the proceedings. *See Edward B. v. Paul*, 814 F.2d 52, 53–54 (1st Cir.1987). These official recordings are made available to the parties for purposes of appeal. 20 U.S.C. § 1415(d)(3); 34 C.F.R. § 300.508(a)(4); N.H.Code of Admin. R. Ed. 1127.02(a)(10)–d.

Caroline's hearing began on December 18, 1989. The District's counsel brought a private court reporter certified by the State of New Hampshire, N.H. Rev. Stat. Ann. 331-B:2 VI, –B:3, –B:9, together with his equipment, to record the proceedings at the District's expense. After counsel for Caroline's parents announced their intention to appeal the prehearing order allowing the school district to employ a court reporter to record the hearing, the hearing was re-cessed. Appellants contend that they had no prior notice that the District would engage its own stenographer, or that an unofficial recording would be made, notwithstanding the order issued at the prehearing conference.

On December 19, 1989, a complaint was filed in the district court seeking an injunction to restrain enforcement of the hearing officer's prehearing conference order regarding the District's right to "record the hearing," and judicial review of the prehearing order itself. 20 U.S.C. § 1415(e)(2). After a magistrate recommended that the request for a restraining order be denied, and that the complaint be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a cause of action, the district court entered judgment to that effect on January 22, 1990.

After carefully reviewing the record, and finding appellants' arguments totally lacking in merit, we affirm the decision of the district court.

## II. STANDARD OF REVIEW

■ At the district court level, appellants sought purely injunctive relief—an order barring the District from recording the special education hearing. Since injunctive relief is a discretionary remedy, *K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915 (1st Cir.1989), on appeal, we review only to ensure that the district court did not abuse its discretion in granting, or failing to grant, such relief. *Id.*

■ Caroline sought two forms of injunctive relief: temporary and permanent. The standards are nearly identical.

> In the First Circuit, a plaintiff must satisfy four criteria in order to be entitled to a preliminary injunction. The Court must find: (1) that plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive re-

---

1. Although the relevant regulations ordinarily require that all administrative proceedings be completed within 45 days after a complaint has been filed, 34 C.F.R. § 300.512(a); N.H.Code of Admin. R. Ed. 1127.02(a)(2), (9), in this case the hearing was scheduled for December, 1989. Since neither party has addressed whether the delay in completing the proceedings is significant, we defer to their lack of objection.

lief would inflict on the defendant; (3) that the plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of an injunction.

*Agency Rent–A–Car, Inc. v. Connolly*, 686 F.2d 1029, 1034 (1st Cir.1982). Where a plaintiff seeks permanent injunctive relief, the test is the same, except that "the movant must show actual success on the merits of the claim, rather than a mere likelihood of such success." *K–Mart Corp.*, 875 F.2d at 914–15. For the reasons explicated below, we hold that the district court did not abuse its discretion in denying appellant's request for an injunction.

## III. TAPE RECORDING AND DUE PROCESS

■ Appellants argue that allowing a school district to employ a third party to make an unofficial recording of a special education proceeding violates the due process rights of parents and their educationally handicapped children. We can find no legal support for this contention.

Although it is true that, as appellants argue, hearing officers have a responsibility to conduct hearings in a manner consistent with impartiality, 34 C.F.R. § 300.500; N.H.Code of Admin. R. Ed. 1127.02(A), and privacy, 20 U.S.C. § 1417(c); 34 C.F.R. § 300.508(b)(2); N.H.Code of Admin. R. Ed. 1127.02(a)(10)(g), this duty is not incompatible with permitting one party to employ a stenographer for the purpose of transcribing the proceedings. The statutes do not suggest otherwise.

The Education for All Handicapped Children Act, 20 U.S.C. § 1401 *et seq.* (1980) ("Act"), guarantees both parties the right to a verbatim written or electronic record

of the administrative hearing. 20 U.S.C. § 1415(d); *see Edward B. v. Paul*, 814 F.2d at 54. The statutes clearly provide that:

> Any party to any hearing ... shall be accorded ... (3) the right to a written or electronic verbatim record of such hearing, and (4) the right to written findings of fact and decisions...."

20 U.S.C. § 1415(d). *See also* 34 C.F.R. §§ 300.508(a)(4) & (5); N.H.Code of Admin. R. Ed. 1127.02(a)(10)(d) & (e). But the statutes do not give hearing officers the exclusive prerogative to make recordings. Indeed, as the United States District Court for the District of New Hampshire warned in a similar case, the tapes made by the special education hearing officer "were of very poor quality and could not be accurately transcribed.... The court ... [sent] a copy of this order to the [New Hampshire] State Department of Education with the purpose of indicating to it the need for adequate tapes in future proceedings." *Edward B. v. Rochester School District*, No. C86–7–L, order (D.N.H. Nov. 17, 1987).

Apparently the court's suggestions have gone unheeded. As one affidavit in this case states, "it is impossible to produce a *verbatim* transcript of administrative hearings based upon the state's tapes. There are gaps in what has been recorded, speakers are sometimes inaudible (cannot be heard), and speakers are sometimes indiscernible (voices can be heard but words cannot be understood)." Joint Appendix at 62–63. Thus, we conclude that, in order to secure its entitlement to a verbatim record of the hearing, the District had a right to ensure that a quality recording was made.[2] The attendance of a court reporter is a reasonable and necessary means for the

---

**2.** Another statute provides that "[t]he transcript of testimony and exhibits, together with all papers and requests filed in the proceeding, constitutes the exclusive record for decision ... and, on payment of lawfully prescribed costs, shall be made available to the parties." 5 U.S.C. § 556(e). Again, this statute does not make it the exclusive province of the hearing officer to make recordings. *See* 5 U.S.C. § 556(e); 34 C.F.R. § 300.508(a); N.H.Code of Admin. R. Ed. 1127.02(a)(10)(d). Thus, we find no merit in appellants' argument that "to obtain" is not

equivalent to "to create one's own," as the hearing officer and district court properly found, or in their contention that the hearing officer somehow violated his obligation to retain control over all aspects of the hearing by granting the District permission to make its own verbatim recording of the proceeding. The District had a statutory right to a verbatim record of the proceedings, and the district court did not err in finding that an independent recording was a reasonable means of obtaining that record.

school district to secure its statutory right to a verbatim record.

■ Nor can we say that the privacy rights of the child or of her parents would be violated by the attendance of the court reporter/stenographer. By statute, public access to special education hearings is permitted only with the permission of the parents or, in some cases, of the child. 34 C.F.R. § 300.508(b)(2); N.H.Code of Admin. R. Ed. 1127.02(a)(10)(g). Similarly, the public's right to know or to obtain information regarding the hearing is in the control of the parents and the child. 20 U.S.C. §§ 1412(2)(D) & 1417(c); 34 C.F.R. § 300.574. This court cannot agree, however, with appellants' contention that allowing the presence of the court reporter/stenographer is equivalent to release of private information about the hearing without the permission of Caroline's parents, in violation of their right to privacy.

Section 1415(e)(2) confers upon federal courts the jurisdiction to hear appeals from administrative hearings. 20 U.S.C. § 1415(e)(2). As the magistrate found, subsection (e)(2) clearly contemplates an obligation on the part of the appealing party to provide the court with a transcript of the hearing. *See Edward B. v. Paul*, 814 F.2d 52. We can find no meaningful distinction between permitting a court reporter/stenographer to attend a hearing to make the verbatim recording, and exposing that same person to the recording at the completion of the hearing to make a transcript of the proceeding. Thus, we conclude that the presence of a court reporter/stenographer at a special education hearing is not the equivalent of opening the hearing to the public.[3]

## IV. LEVEL PLAYING FIELD

■ Appellants next contend that the Act contemplates that both parties be on equal footing, on a level playing field. 20 U.S.C. § 1415(b). Therefore, they argue, either both parties should be given the means to have a private recording made, or neither should be permitted to do so. Access to the recording during trial by one party, appellants contend, creates an unfair advantage, because the recording can be used to allow non-attending witnesses to read testimony and thereby prepare extensively prior to testifying. Appellants also argue that the supposedly non-adversarial environment of the hearing is physically and emotionally abused by the excessive equipment and excess personnel which are associated with a second recording. Finally, appellants assert that recording by one party to the proceedings violates the Act's provision that parties may obtain a copy of the official recording upon request and payment of costs.

From the record and arguments before us, we find no evidence that Caroline raised a legitimate constitutional due process claim. Constitutional issues do not appear to have been raised before either the administrative hearing officer or the district court. Even if constitutional issues had been made, however, the attendance of a court reporter/stenographer at a special education hearing does not violate constitutional due process. Although state and federal constitutions do not require a verbatim record to be made, constitutional due process considerations do not prohibit one either.

Even if, and we do not suggest that it does, the attendance of a court reporter/stenographer gave the school district an unfair advantage, frightened Caroline, or infringed upon her privacy, it does not rise to the level of a constitutional violation. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful man-

---

**3.** We similarly dismiss appellants' contention that the use of a court reporter/stenographer would lead to dissemination of the record beyond the control of the parties. The magistrate concluded, and we agree, that such argument is purely speculative. If appellants' truly felt that such dissemination was imminent, they would certainly have the prerogative to request a pro-tective order to protect their privacy interests. In this case, the private court reporter selected by the District was certified by the Chief Justice of the Superior Court of New Hampshire. Any misconduct on his part would have been subject to discipline. N.H.Rev.Stat.Ann. 331–B:2 VI, –B:3, –B:9.

ner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333–334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). There is no constitutional prohibition on permitting one party to employ litigation techniques which the other party cannot afford or chooses not to use, so long as those techniques are used for legitimate purposes, such as discovering or preserving evidence.

We note, finally, that Caroline's concerns largely ignore reality. As the District states in its brief to this court, the record created by the court reporter is available to both parties. Although the District pays the reporter to record the hearing, either party may request a transcript, for which the court reporter charges a typing fee. The school district does not have a monopoly over the record which he creates. Instead of "tilting the playing field," the court reporter/stenographer neutrally assists the fact finding process by preserving a verbatim record of the proceedings, a transcript of which is available to either party on request.

Caroline's arguments are appropriately addressed by administrative regulations rather than constitutional law, and the relevant regulations are not sympathetic. *See* 34 C.F.R. § 300.500; 34 C.F.R. § 300.508(a), (b).

## V. MOOTNESS

■ After oral argument for this case was complete, the District moved to dismiss for mootness. This motion was based upon an agreement reached the day after oral argument that a court reporter/stenographer would be permitted to attend a special education hearing for the 1990–91 school year. Since that agreement, by its terms, does not apply to the long-delayed proceedings for the 1989–90 school year, the case currently before this court is not moot. The only issue on appeal is whether the district may bring a court reporter to a hearing regarding Caroline's special education placement for the 1989–90 school year. Obviously, the 1989–90 school year has come to an end. Caroline's parents, however, unilaterally placed her in a private school for that year, and

may seek reimbursement for the costs of that placement.

Nor is the case rendered moot by reason of the May 30, 1990 dismissal with prejudice of Caroline's case. The hearing officer dismissed the case for failure of her and her parents to cooperate in the hearing process, and for boycotting the final days of the hearing. Upon review, this court finds that the dismissal with prejudice does not render the case moot, because Caroline may seek judicial review of the dismissal order, and may request that the district court remand the case to the Department of Education for a continued administrative hearing. Moreover, Caroline may seek an administrative hearing regarding the 1991–92 school year, making the case one that is capable of repetition yet evading review. *Honig v. Doe*, 484 U.S. 305, 317–323, 108 S.Ct. 592, 600–604, 98 L.Ed.2d 686 (1988). For these reasons, we hold that there is a live controversy, and deny the District's motion to dismiss the appeal for mootness.

## VI. CONCLUSION

■ Consideration of this case has led us to the unmistakable conclusion that it is both completely devoid of merit and plagued by unnecessary delay. Indeed, we are unable to say that it is:

> well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. We will not indulge in a discourse of all the reasons supporting our decision to award costs and attorneys fees against appellants under Appellate Rule 38, and to suggest that Fed.R.Civ.P. 11 be invoked below. The proceedings have gone on long enough. Instead, we highlight only those things which we find most objectionable.

In New Hampshire, special education hearings must normally be completed within 45 days of the filing of a request for a hearing. 34 C.F.R. § 300.512(a); N.H.Code

of Admin. R. Ed. 1127.02(a)(2), (9). In this case, that would have meant by August 25, 1989. Now, more than one year later, the case is still in litigation. The first delay, which resulted in the prehearing conference not being scheduled until October 30, 1989, was occasioned as much by appellants' refusal to complete mediation proceedings, as it was from an illness on the part of appellants' counsel. But this was only the first of many delays.

At the prehearing conference, the District requested permission to have a private court reporter/stenographer record the proceedings. The request was granted, and appellants filed an objection. Yet, in their brief to this court, appellants argue that they had no notice until the commencement of the hearing that the District would in fact take steps to make such a recording. To argue that the request for permission was insufficient to provide notice of the District's intent is simply ludicrous. The farce was compounded by appellants' failure to announce their intention to appeal the order until after the hearing was commenced on December 18, 1989, which, of course, resulted in the hearing having to be suspended.

The hearing was resumed on December 20th, after the District agreed not to record the testimony presented on behalf of appellants. It was expected that this testimony would continue through the 22nd. But it was not meant to be. Although appellants had ample time to assemble their witnesses, on the eve of the final scheduled day, appellants'· counsel cavalierly announced that he could not be sure of the availability of his final four witnesses for the following day. As a result, yet another day was wasted, and the hearing was recessed until January 29th.

On December 28th, a magistrate recommended dismissal of appellants' action relating to the recording issue, and on January 22, 1990, the district court accepted that recommendation. Notwithstanding the district court's dismissal of their action, when the hearing to determine appropriate educational placement for Caroline resumed on January 29th, appellants refused to go forward. No appeal of the district court order had been filed, and no request for an injunction pending an appeal had been made. Again, Caroline's education, the crux of the hearing, was left unresolved.

When the District offered to modify its use and control over the court reporter, the parties began negotiations which culminated in a series of stipulations which would have effectively negated the recording issue now before this court. Although the hearings briefly continued, appellants never signed the stipulations, and eventually abandoned them to continue with the appellate process.

After various other difficulties, appellants' moved for a continuance due to an illness on the part of their counsel. The continuance was granted, but the hearing officer had significant difficulties in persuading appellants to set a date for the hearings' resumption. On March 28, 1990, appellants' counsel advised the hearing officer that his medical treatment would continue through May. He also stated that he believed that seeking a federal court order to restrain the holding of a hearing prior to the outcome of this case would be "redundant and abusive." This position completely contradicts appellants' earlier assertions on January 29th and February 27th that they were considering making such an injunctive request.

The hearing officer rescheduled the hearing for May 31st, thus giving appellants eight weeks in which to seek injunctive relief. Instead, on May 3, 1990, appellants and their attorney announced their intention to boycott any further administrative hearings.

Special education proceedings exist to further students' educational needs. The conduct in the instant case so delayed the proceedings that, although the school year was over, the dispute was still unresolved. We remand the case to the district court for consideration of sanctions under Fed.R. Civ.P. 11. Pursuant to Fed.R.App.P. 38, we direct the payment of costs and reasonable attorneys fees on appeal to the District.

759

*Affirmed and remanded.* Costs and attorneys fees to appellee. The motion to dismiss appeal for mootness is denied.